# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARLA S. GOODMAN,            )
                            )
            Plaintiff,       )
                            )
      v.                     )        1:15CV00570
                            )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social )
Security,                    )
                            )
            Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Carla S. Goodman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 17; see also Docket Entry 15 (Plaintiff's Brief), Docket Entry 18 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on September 27, 2011. (Tr. 220-28.)[1] Upon denial of that application initially (Tr. 126-39, 159-

_____

[1] Plaintiff filed previous applications, resulting in two prior ALJ decisions denying her claims for benefits. (See Tr. 72-84 (decision dated October 13,
(continued...)

62) and on reconsideration (Tr. 140-57, 165-74), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 175-77). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-70.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 16-30.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since September 27, 2011, the application date.

2. [Plaintiff] has the following severe impairments: fibromyalgia, left knee osteoarthritis, bilateral greater trochanter bursitis, bilateral plantar heel spurs, migraine headaches, obesity, major depressive disorder, and generalized anxiety disorder.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that she is further limited to occasional climbing of ladders, ropes, and scaffolds, and should avoid concentrated exposure to hazards such as moving machinery and unprotected heights.

---

[1] (...continued)
2004), 92-106 (decision dated February 11, 2008).) Plaintiff judicially challenged the latter administrative decision, but this Court upheld the ALJ's determination. (See Tr. 112-25.)

[Plaintiff] is able to perform simple, routine, repetitive tasks in a stable environment with limited interaction with others.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the [] Act, since September 27, 2011, the date the application was filed.

(Tr. 21-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

---

[2]  The Act "comprises two disability benefits programs.  The Disability Insurance Benefits Program . . . provides benefits to disabled persons who have contributed to the program while employed.  [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden on the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[3]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to step five, where the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

1) "[t]he ALJ improperly determined that [Plaintiff's] impairments did not meet the listing for 12.04 (Affective Disorders)" (Docket Entry 15 at 2 (bold font omitted));

2) "[i]n assessing [Plaintiff's] [RFC], it was error for the ALJ not to give controlling weight to the RFC provided by Dr. Laura Dunn, her psychiatrist since at least 2002" (id. at 6 (bold font and internal citation omitted)); and

3) "[t]he ALJ erred in concluding that [Plaintiff] was capable of 'medium' work because that conclusion is not based on substantial evidence and the [ALJ] incorrectly evaluated [Plaintiff's] subjective complaints of pain and their effect on her [RFC]" (id. at 9 (bold font omitted)).

Defendant has contended otherwise and has requested affirmance of the ALJ's decision. (Docket Entry 18 at 4-19.)

### i. Listing 12.04

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized

by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify.").

Plaintiff's Brief argues that "[t]he ALJ improperly determined that [Plaintiff's] impairments did not meet the listing for 12.04 (Affective Disorders) of the Listing for Medical Impairments." (Docket Entry 15 at 2.) To meet Listing 12.04, Plaintiff must satisfy either the criteria in paragraphs A and B, or the criteria in paragraph C, see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. Here, the parties dispute whether the ALJ properly determined that Plaintiff did not satisfy the paragraph B criteria.[6] Under paragraph B, Plaintiff must show that her mental impairments:

B. Result[] in at least two of the following:

  1. Marked restriction of activities of daily living; or

---

[6] The ALJ apparently assumed, without explicitly finding, that Plaintiff's mental impairments satisfied the paragraph A criteria of Listing 12.04. (See Tr. 22-23.) Moreover, Plaintiff has not challenged the ALJ's determination that Plaintiff's mental symptoms do not meet the paragraph C criteria of Listing 12.04. (See Docket Entry 15 at 2-6; see also Tr. 23.)

> 2. <u>Marked</u> difficulties in maintaining <u>social functioning</u>; or
>
> 3. <u>Marked</u> difficulties in maintaining <u>concentration, persistence, or pace</u>; or
>
> 4. <u>Repeated episodes of decompensation, each of extended duration</u>[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04B (emphasis added). In this context, to qualify as "marked," a limitation must "interfere <u>seriously</u> with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C) (emphasis added); <u>see also</u> 20 C.F.R. § 416.920a(c)(4) (explaining that "marked" represents the fourth-highest of five levels, below "extreme," but above "none, mild, [and] moderate"). Decompensation here refers to "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(4). "[R]epeated episodes of decompensation, <u>each of extended duration</u> . . . means three episodes within 1 year, or an average of once every 4 months, <u>each lasting for at least 2 weeks</u>." <u>Id.</u> (emphasis added).

As to daily living activities and social functioning, the ALJ concurred with the State agency psychological consultant's conclusions that Plaintiff suffered "no more than mild restriction" and "no more than mild difficulties," respectively. (Tr. 23.) "With regard to concentration, persistence or pace, the [ALJ]

10

agree[d] with the State agency psychological consultant's finding that [Plaintiff] has moderate difficulties." (<u>Id.</u>)  Finally, the ALJ determined that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration."  (<u>Id.</u>)

In Plaintiff's view, the ALJ should have given controlling weight to the opinion(s) of Dr. Dunn and, as a result, found Plaintiff to have satisfied the paragraph B criteria. (<u>See</u> Docket Entry 15 at 4-5.)  Dr. Dunn endorsed only slight to moderate restriction in Plaintiff's daily living activities.  (Tr. 558.) Further, although Dr. Dunn indicated that Plaintiff suffered from repeated episodes of decompensation (Tr. 559), Dr. Dunn provided no information that would show each such episode lasted the requisite duration (<u>see</u> <u>id.</u>).  Accordingly, Plaintiff could prevail on this assignment of error only if she could establish that the record compelled the ALJ <u>both</u> (1) to adopt Dr. Dunn's opinion that Plaintiff's social functioning difficulties rose to the "Marked" level (Tr. 558) <u>and</u> (2) to adopt Dr. Dunn's opinion that Plaintiff experienced "Frequent" deficiencies in concentration, persistence, or pace ("CPP") (<u>id.</u>), as well as to conclude that by "Frequent" Dr. Dunn meant "Marked."  Plaintiff has not made such a showing.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.  20 C.F.R. § 416.927(c)(2) ("[T]reating sources . . . provide a detailed,

longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule recognizes, however, that not all treating sources or treating source opinions merit the same deference. For example, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added). Here, the ALJ's evaluation of Dr. Dunn's opinions regarding Plaintiff's social functioning clearly comports with the regulations and Craig.[7]

Specifically, the ALJ explained that he gave "little weight to Dr. Dunn's form because it is internally inconsistent and inconsistent with the progress notes and [Plaintiff's] activities of daily living." (Tr. 27.) As to social functioning in

---

[7] Because, as discussed above, Plaintiff could succeed on this assignment of error only if the record required the ALJ to accept Dr. Dunn's "marked" finding as to social functioning, the Court need not delve into whether the ALJ erred by failing to adopt a "Marked" limitation as to CPP in light of Dr. Dunn's finding that Plaintiff suffered "Frequent" deficiencies in that area.

particular (and contrary to Dr. Dunn's description of Petitioner's difficulties in that sphere as "Marked," i.e., "seriously" impaired), the ALJ observed that Plaintiff "stated that she might go out to eat, go with her boyfriend to visit his mother, or go places with her son." (Tr. 23; see also Tr. 54-55 (setting forth Plaintiff's testimony about activities with her boyfriend and son).) Further (and again undermining Dr. Dunn's finding that Plaintiff experienced "Marked" difficulties in social functioning), the ALJ noted that Plaintiff "sees her twin sister several times each week" and "sees her six-year-old granddaughter once or twice a week for several hours." (Tr. 23; see also Tr. 54-56 (documenting Plaintiff's testimony about her interactions with her twin sister and granddaughter).)

Additionally, the ALJ pointed out that "Dr. Dunn indicated that [Plaintiff's] current Global Assessment of Functioning (GAF) score was 62, with a high GAF over the prior year of 68." (Tr. 27 (citing Tr. 554).) As the ALJ observed, "[a]ccording to the Diagnostic and Statistical Manual of Mental Disorders [("DSM")], 4th Edition, a GAF of 61 to 70 indicates some mild symptoms or some difficulty in social or occupational functioning; however, the individual generally functions pretty well with some meaningful interpersonal relationships. This is inconsistent with Dr. Dunn's

13

ratings." (Tr. 27 (emphasis added).)[8] Finally, the ALJ documented that two State agency psychological consultants "found only <u>mild</u> limitation in social functioning . . . ." (<u>Id.</u> (emphasis added); <u>see also</u> Tr. 131, 148.)[9]

Simply put, the ALJ acted well within a proper range of decision-making in rejecting Dr. Dunn's summary declaration that Plaintiff experienced "Marked" social functioning difficulties.

---

[8] Plaintiff does not dispute that Dr. Dunn's GAF assessment conflicted with Dr. Dunn's finding of "Marked" limitation in social functioning. (<u>See</u> Docket Entry 15 at 2-8.) Instead, Plaintiff has argued that "[i]t is error to assign so much weight to the GAF score when the rules advise the [ALJ] not to rely on them and the other evidence indicates severe or marked problems with functioning. In fact, the DSM V, published in May, 2013, six (6) months before the hearing, effectively removed the GAF rating for psychiatric providers." (<u>Id.</u> at 7.) This argument does not warrant overturning the ALJ's decision to discount Dr. Dunn's opinion about the level of Plaintiff's social functioning limitation. As an initial matter, contrary to Plaintiff's assertion, despite the omission of GAF scores from the latest edition of the DSM, the Social Security Administration continues to deem GAF scores medical opinions that ALJs must consider. <u>See</u> <u>Kennedy v. Colvin</u>, No. 3:14CV665RJC, 2016 WL 890602, at *4 (W.D.N.C. Mar. 8, 2016) (unpublished) (quoting from Social Security Administration, Administrative Message 13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (eff. July 22, 2013)); <u>see also</u> <u>Mitchell v. Colvin</u>, No. 5:15CV344D, 2016 WL 3944689, at *5 (E.D.N.C. June 28, 2016) (unpublished) (concluding that remand should occur because ALJ failed to consider GAF score), <u>recommendation</u> <u>adopted</u>, 2016 WL 3945322 (E.D.N.C. July 18, 2016) (unpublished). In addition, as detailed above, "other evidence," including Plaintiff's own testimony, undermines (rather than supports) a finding of "marked problems" with social functioning. Lastly, the ALJ did not rely on a random GAF score somewhere in the record to reject Dr. Dunn's finding that Plaintiff suffered from "Marked" difficulties with social functioning; rather, as quoted above, the ALJ reasonably pointed out that, not only did a stark conflict exist between the GAF score assigned to Plaintiff <u>by Dr. Dunn</u> and the "Marked" social functioning deficit finding assigned to Plaintiff <u>by Dr. Dunn</u>, but those starkly conflicting opinions appear <u>in the very same document</u>.

[9] The ALJ properly relied on those findings. <u>See, e.g.</u>, <u>Mullis v. Colvin</u>, No. 1:11CV22, 2014 WL 575722, at *6 (M.D.N.C. Feb. 11, 2014) (unpublished) (Webster, M.J.) ("[E]vidence from non-examining physicians — such as the state agency consultants in this case — can constitute substantial evidence to support a finding of non-disability to the extent they are consistent with the record."), <u>recommendation adopted</u>, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (unpublished) (Osteen, C.J.); <u>Adams v. Barnhart</u>, Civ. No. 05-134-B-W, 2005 WL 3832408, at *3 n.4 (D. Me. Mar. 6, 2005) (unpublished) ("[T]wo state-agency psychologists found no limitation or less than marked limitations . . . . The [ALJ] was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

The Court need go no further.  In sum, to satisfy the paragraph B criteria of Listing 12.04, Plaintiff had to establish at least <u>two</u> of the following:  (1) "Marked" deficiencies in daily living activities; (2) "Marked" difficulties with social functioning; (3) "Marked" limitations in CPP; and/or (4) repeated episodes of decompensation, each of extended duration.  Plaintiff's instant assignment of error insists that Dr. Dunn's findings should have compelled the ALJ to conclude that Plaintiff met at least two of the paragraph B criteria.  However, Dr. Dunn's report found less than "Marked" deficiencies in daily living activities and lacked any finding as to the duration of any decompensation episodes. Moreover, the ALJ properly discounted Dr. Dunn's conclusion that Plaintiff suffered "Marked" difficulties with social functioning. Plaintiff therefore cannot meet her burden as to paragraph B in Listing 12.04, regardless of any conflict between Dr. Dunn's report and the ALJ's finding that Plaintiff's CPP limitation qualified as only "Moderate."  The Court thus should deny relief on this front.

### ii. Dr. Dunn's RFC Opinion(s)

Plaintiff next has argued that, "[i]n assessing [her] [RFC], it was error for the ALJ not to give controlling weight to the RFC provided by Dr. [] Dunn . . . ."  (Docket Entry 15 at 6 (bold font omitted) (citing Tr. 552-59).)  "RFC is a measurement of the most [Plaintiff] can do despite h[er] limitations," <u>Hines</u>, 453 F.3d at 562, including as concerns any mental limitations, <u>see</u> <u>Hall</u>, 658

15

F.2d at 265. The ALJ here concluded that Plaintiff possessed the RFC "to perform light work . . . except that she is further limited to occasional climbing of ladders, ropes, and scaffolds, and should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. [Plaintiff] is able to perform simple, routine, repetitive tasks in a stable environment with limited interaction with others." (Tr. 24 (bold font omitted).)

The record pages cited by Plaintiff as the "RFC provided by Dr. [] Dunn" actually consist of a six-page "Mental Residual Functional Capacity Questionnaire (RFC & Listings)" completed by Dr. Dunn (the "Questionnaire") (Tr. 554-559) and two cover pages used to transmit it to the Social Security Administration (Tr. 552-53). The Questionnaire covers a number of things, beginning with the "[f]requency and length of contact" between Dr. Dunn and Plaintiff (Tr. 554), a "DSM-IV Multiaxial Evaluation" (id.), a checklist of "signs and symptoms" (Tr. 554-55), space for "[o]ther symptoms and remarks" (left blank) (Tr. 555), space for "clinical findings" (as to which Dr. Dunn simply said "see notes") (id. (italics omitted)), and questions about matters such as malingering ("No"), course of treatment ("Treated with meds & therapy [with] valuable response but still chronic symptoms"), medications ("see notes"), and prognosis ("guarded, chronic") (Tr. 555-56). It then addresses Plaintiff's "ability to do work-related activities on a day-to-day basis in a regular work setting," by seeking ratings of

16

"Unlimited or Very Good," "Good," "Fair," or "Poor or None"
regarding 16 "MENTAL ABILITIES AND APTITUDE[S] NEEDED TO DO
UNSKILLED WORK," four "MENTAL ABILITIES AND APTITUDES NEEDED TO DO
SEMISKILLED AND SKILLED WORK," and five "MENTAL ABILITIES AND
APTITUDES NEEDED TO DO PARTICULAR TYPES OF JOBS." (Tr. 557-58.)[10]
The Questionnaire concludes with a different rating scale
(discussed in Section II.B.i.) for "activities of daily living,"
"social functioning," CPP, and "[e]pisodes of deterioration or
decompensation" (Tr. 558-59), along with questions about postural,
dexterity-related, and environmental limitations, Plaintiff's
ability to manage benefits, and the starting date of "the symptoms
and limitations described" (Tr. 559).

The approximately three pages of argument Plaintiff's Brief
devotes to this assignment of error do <u>not</u> make clear what precise
part of Dr. Dunn's answers on the Questionnaire Plaintiff contends
the ALJ should have incorporated into the RFC (much less what
specific restriction(s) the ALJ should have adopted and/or how any
such restriction(s) plausibly would have affected Plaintiff's
ability to perform the available jobs the ALJ concluded Plaintiff
could do). (<u>See</u> Docket Entry 15 at 6-8.) Instead, Plaintiff has

---

[10] Of the 25 total items, Dr. Dunn assigned 12 ratings of "Fair" and 13 ratings
of "Poor or None." (Tr. 557-58.) As Defendant has documented (<u>see</u> Docket Entry
18 at 12-15), the record generally supports the ALJ's determination that "Dr.
Dunn's form . . . is internally inconsistent and inconsistent with the progress
notes" (Tr. 27). Because (as shown in the discussion that follows above)
Plaintiff has not developed a meaningful challenge to the ALJ's RFC analysis based on
specific opinions expressed by Dr. Dunn on the Questionnaire, further analysis
of any particular rating made by Dr. Dunn appears unwarranted.

offered broad characterizations of Dr. Dunn's opinions (or notes) as a whole, i.e., "the RFC provided by Dr. [] Dunn . . . provides substantial evidence that [Plaintiff] is disabled" (id. at 6 (bold font omitted)), Dr. Dunn's notes "show a pattern of rumination and overwhelming worry that preclude [sic] work" (id.), Dr. Dunn's notes documenting Plaintiff's reports of feeling "stressed out" "make the RFC compelling evidence to support [Plaintiff's] claim" (id. at 7), "[t]he psychiatric evidence shows that as a practical matter, [Plaintiff] worries too much to work" (id. at 8), and "twelve (12) years of admitted unsuccessful treatment by the same doctor provides overwhelming support that [Plaintiff] is 'disabled'" (id.). In essence, Plaintiff would have the Court rule that Dr. Dunn said Plaintiff cannot work and that the ALJ should have adopted that statement as Plaintiff's RFC; the RFC assessment, however, involves identifying concrete capabilities and restrictions, see Hines, 453 F.3d at 562; Hall, 658 F.2d at 265; see also 20 C.F.R. § 416.927(d)(1) (explaining that opinions from medical sources that an SSI claimant is "disabled" or "unable to work" do not receive deference because they represent "opinions on issues reserved to the Commissioner").

Particularly given the "extremely limited" nature of judicial review in this sphere, Frady, 646 F.2d at 144, Plaintiff's approach entitles her to no relief, see, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to

spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Nickelson v. Astrue</u>, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) (Dixon, M.J.) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the [C]ourt will not address them."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2009) (Schroeder, J.).

### iii. Capacity for Medium Work

Plaintiff's third (and final) assignment of error states that "[t]he ALJ erred in concluding that [Plaintiff] was capable of 'medium' work because that conclusion is not based on substantial evidence and the [ALJ] incorrectly evaluated [Plaintiff's] subjective complaints of pain and their effect on her [RFC]." (Docket Entry 15 at 9 (bold font omitted); <u>see also id.</u> at 11 ("[W]e contend that it is error to reject [Plaintiff's] testimony on the grounds cited in the decision. Therefore, it follows that it was error to conclude that she could handle the demands of 'medium' work.").) As the quotation from the ALJ's decision in Section I and Section II.B.ii. document, the ALJ did <u>not</u> "conclud[e] that [Plaintiff] was capable of 'medium' work" (<u>id.</u> at 9). (<u>See</u> Tr. 24 (finding that Plaintiff could "perform light work" with significant additional restrictions (bold font omitted)).) Because this entire assignment of error proceeds from a false premise, the Court should deny relief.

19

More specifically, Plaintiff cannot obtain remand or reversal simply by establishing that the ALJ "incorrectly evaluated" some aspect of Plaintiff's symptom-related testimony; instead, Plaintiff also must show that any such incorrect evaluation somehow impacted the ALJ's finding that Plaintiff did not qualify as disabled. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result"). In this instance, Plaintiff has argued that the ALJ's incorrect evaluation of Plaintiff's testimony about pain caused the ALJ to improperly conclude that Plaintiff could perform medium work (and, by logical extension, to wrongly find that the availability of medium work jobs defeated Plaintiff's disability claim). Because the ALJ did not draw any such conclusion about medium work, Plaintiff's theory that an erroneous assessment of her testimony led to an erroneous disability determination collapses. Moreover, the Court should decline to come up with a new theory of prejudice for her. See, e.g., Chavez v. Colvin, No. CIV-15-249-L, 2016 WL 1171913, at *2 n.2 (W.D. Okla. Feb. 17, 2016) (unpublished) ("Notably, Plaintiff is represented by counsel. In juxtaposition, even a pro se litigant is not entitled to advocacy by the [c]ourt in the form of 'serving as the litigant's attorney in constructing arguments and

searching the record.'" (quoting <u>Garrett v. Selby Connor Maddux &</u> <u>Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005))), <u>recommendation</u> <u>adopted</u>, 2016 WL 1178809 (W.D. Okla. Mar. 23, 2016) (unpublished); <u>Hott v. Astrue</u>, Civ. Action No. JKB-09-2729, 2010 WL 4781303, at *3 (D. Md. Nov. 17, 2010) (unpublished) ("It is not this [c]ourt's function to construct an argument for a party.").[11]

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 14) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 9, 2016

---

[11] Alternatively, for reasons detailed in Defendant's Memorandum (<u>see</u> Docket Entry 18 at 16-19), the Court should deny relief on this assignment of error because the record reflects that the ALJ complied with Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in</u> <u>Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, in evaluating Plaintiff's testimony about pain.